**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**CARMEN MARIA CRUZ,**

**Plaintiff,**

**v.** **Case No.: 5:26-cv-134-PRL**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant,**
______________________________________/

**ORDER**

Plaintiff appeals the administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"). Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is **AFFIRMED.**

## I. BACKGROUND

For the sake of convenience, the administrative history, which is not in dispute, is copied from the Government's brief:

> On July 30, 2021, Plaintiff filed an application for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, alleging disability beginning September 2, 2020 (Tr. 183-84). The claim was denied initially on August 16, 2022 (Tr. 104-08), and upon reconsideration on November 28, 2023 (Tr. 118-21). Plaintiff filed a request for hearing by ALJ on December 3, 2023 (Tr. 123-24). An ALJ held a hearing on May 24, 2024 (Tr. 53-83) and issued a decision finding Plaintiff not disabled on July 21, 2024 (Tr. 29-52). Plaintiff filed a request for review with the agency's Appeals Council (Tr. 176-82), which was denied on January 22, 2026 (Tr. 1-6). On that date, the hearing decision became the "final decision" of the Commissioner subject to judicial review. 20 C.F.R. § 404.900(a)(5). The present civil action follows. This Court has jurisdiction under 42 U.S.C. § 405(g).

(Doc. 10 at 1-2).

Plaintiff was 53 years old on the date of the ALJ's decision. (Tr. 183). Plaintiff has some college education and previous work experience as a legal assistant. (Tr. 229). Based on a review of the record, the ALJ found that Plaintiff had the severe impairments of cervical spondylosis with myelopathy, osteoarthritis and secondary fibromyalgia, unspecified depressive disorder, with moderate anxious distress, and PTSD, unspecified. (Tr. 35).

The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform light work with some limitations. The ALJ found:

> she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk six hours of an eight-hour day and sit six hours of an eight-hour day. She can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She is never able to work around hazards such as unprotected heights. She can carry out simple tasks without a production rate pace (such as assembly line). She can interact occasionally with supervisors, co-workers, and the public. She can tolerate occasional changes in routine work settings. She can perform no overhead reaching bilaterally.

(Tr. 37).

Based upon the RFC, and relying upon the testimony of a vocational expert, the ALJ found that an individual with Plaintiff's age, education, work experience, and RFC could perform work that exists in significant numbers in the national economy, such as the jobs of mailroom clerk, non-postal, cleaner, and price marker. (Tr. 44). Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 44).

## II. STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

## III. Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ's RFC finding is supported by substantial evidence as related to manipulative limitations; and (2) whether the ALJ properly evaluated the opinion of Plaintiff's licensed mental health counselor. (Doc. 9).

### A. The Applicable Regulations

As a preliminary matter, Plaintiff acknowledges that her claim is subject to the updated regulatory framework for evaluating medical opinions. For claims filed on or after March 27, 2017, the Social Security Administration issued revised regulations regarding the evaluation of medical evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (final rules) ("We are revising our rules to ensure that they reflect modern healthcare delivery and are easier to understand and use. We expect that these changes will help us continue to ensure a high level of accuracy in our determinations and decisions.").

The regulations impact agency policy in several important respects and contain several significant changes to prior medical evidence rules. *See* 81 Fed. Reg. at 62,560. To begin, the revised regulations redefine how evidence is categorized. Under the revised regulations, there are five categories of evidence: (1) objective medical evidence; (2) medical opinions; (3) other medical evidence, (4) evidence from nonmedical sources; and (5) prior administrative medical findings. See 20 C.F.R. § 416.913(a)(2017).

Second, the definition of "medical opinion" has been considerably revised. For claims filed by adults on or after March 27, 2017, the regulations provide:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .

> Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co- workers, or work pressures in a work setting;
>
> Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2) (2017).

Third, for claims filed on or after March 27, 2017, the regulations change how the agency considers medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 416.920c (2017). Notably, the regulations no longer use the term "treating source," but refer to "your medical source(s)." 20 C.F.R. § 416.920c (2017). The Commissioner intentionally chose not to retain the "treating source rule" that previously required deference to treating source opinion evidence. *See* 82 Fed. Reg. at 5883. Rather, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017). The ALJ will, instead, consider all medical opinions through the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* § 416.920c(c)(1)-(5).

### B. The ALJ's Consideration of Plaintiff's Residual Functional Capacity

The Court first considers Plaintiff's argument that the ALJ erred in regard to the RFC finding. Specifically, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the RFC fails to incorporate manipulative limitations. (Doc. 9 at 6).

For context, the undersigned begins by observing that the RFC finding does contain the manipulative limitations regarding no overhead reaching bilaterally but does not contain manipulative limitations related to fingering or handling. In discussing manipulative limitations, the ALJ observed, "She exhibited deficits in cervical range of motion, shoulder strength, and grip strength per objective measures and she was sent to physical therapy to address her current impairments and functional limitations." (Tr. 39). The ALJ stated the following:

> [N]one of the consultants had the opportunity to treat or examine the claimant, and their findings were not based on the most recent evidence of record, which shows the claimant is more limited than previously determined. Specifically, notes showing that the claimant exhibited deficits in cervical range of motion, shoulder strength, and grip strength that would warrant further limitations to her ability to climb ladders, ropes, or scaffolds and show the need for manipulative limitations (Exhibit 36Fp2).

(Tr. 41).

Plaintiff suggests that the ALJ should have included further manipulative limitations such as related to fingering and handling. (Doc. 9 at 13). Plaintiff contends that, "because the RFC is silent regarding manipulative limitations and because the ALJ did not engage with the probative evidence which supported limitations in Plaintiff's bilateral hands, the Court cannot meaningfully review whether Plaintiff is capable of performing any work at step five of the sequential evaluation process" (Doc. 9 at 14).

Plaintiff's argument is unavailing and appears to arise, in part, from an overly narrow interpretation of the term "manipulative limitations." As explained in Plaintiff's briefs, Plaintiff contends that the ALJ erred by not including manipulative limitations, specifically limitations related to hands (such as fingering or handling), despite the ALJ's express statement regarding a need for manipulative limitations.

Social Security Ruling 85–15, discusses reaching, handling, fingering, and feeling as a subcategory under the heading "Postural-Manipulative Impairments." Likewise, Social Security Ruling 96-8p specifically mentions both reaching and handling as types of manipulative activities: "[Nonexertional capacity] assesses an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)." SSR 96-8p.

In other words, the ALJ's inclusion of limitations regarding reaching was a type of manipulative limitation. Contrary to Plaintiff's suggestion, there is not a discrepancy between the ALJ's statement regarding the need for manipulative limitations and the lack of additional manipulations. As is apparent from the decision itself, the ALJ's reference to a need for manipulative limitations was addressed by the limitation regarding "no overhead reaching bilaterally." (Tr. 37).

Further, the ALJ's RFC finding is supported by substantial evidence. The ALJ indeed expressly observed "the need for manipulative limitations." (Tr. 41). Notably, that phrase is contained within a larger discussion of the state agency medical consultants' opinions that Plaintiff was capable of light work, and the ALJ's conclusion that Plaintiff was "more limited

than previously determined." (Tr. 41). The ALJ's statement regarding the need for manipulative limitations was followed by a citation to the record reflecting treatment notes. (Tr. 1521-23). The cited treatment note reflects some functional limitations but is silent regarding functional limitations regarding hands. Rather, the cited treatment note largely pertains to Plaintiff's cervical range of motion and shoulder strength. (Tr. 1521-23). Read in context, the ALJ's reference to manipulative limitations relates to the inclusion of a limitation for no overhead reaching bilaterally.

Further, as Defendant asserts, no medical source opined that Plaintiff had limitations regarding handling, fingering, or feeling. (Doc. 10 at 7). Plaintiff does not dispute this assertion and has identified no medical source opinions that support her argument. Rather, Plaintiff cites to numerous treatment notes and records reflecting her reports of pain in her hands and similar symptoms.

As Defendant correctly observes, substantial evidence supports the ALJ's RFC determination and evaluation of Plaintiff's condition. To be specific, the ALJ's determination regarding the scope of manipulative limitations included in the RFC is supported by relevant treatment notes, including an assessment of Plaintiff's cervical range of motion and shoulder strength. (Tr. 1521-23). The ALJ also relied in part upon the prior administrative medical findings related to Plaintiff's physical impairments. (Tr. 41, 84-91, 94-103). Even though the State agency medical consultants (who considered Plaintiff's allegations of having trouble using her hands and reaching) found that Plaintiff had no manipulative limitations, the ALJ determined that the record, including evidence of decreased shoulder strength warranted the inclusion of some manipulative limitations in the RFC. (Tr. 41, 1522). Ultimately, the ALJ

included the limitation of no overhead reaching bilaterally. The ALJ did not err in making the RFC determination.

### C. The ALJ's Consideration of the Treating Therapist's Opinion

Next, Plaintiff argues that the ALJ erred in evaluating the opinion of her treating therapist, LMHC Peluffo. Plaintiff contends that the ALJ erred in making the mental RFC determination and that the ALJ did not properly evaluate Ms. Peluffo's opinion pursuant to 20 C.F.R. § 404.1520c(b)(2), did not resolve the conflicting evidence noted in her own narrative, and substituted her own lay interpretation of the evidence for that of the medical professionals.

Simply put, Plaintiff's arguments are not persuasive. This Court's review is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). Plaintiff's argument amounts to little more than an invitation to the Court to improperly reweigh the evidence and credit the evidence favored by Plaintiff. The ALJ carefully considered the entire record, including all of Plaintiff's impairments, the medical record as a whole, and medical opinion evidence. Upon review, I submit that substantial evidence supports the ALJ's decision and the RFC determination, including the RFC determination as it relates to Plaintiff's mental health.

While Plaintiff has identified aspects of the medical record that she believes supports her argument that the RFC should have contained more limitations, the ALJ considered the entire medical record in light of the relevant factors, including supportability and consistency. Under the regulations, the ALJ is directed to consider the supportability and consistency of medical opinion evidence. Here, the ALJ did so and found Peluffo's opinion unpersuasive,

citing numerous reasons. The ALJ noted that Peluffo's opinion was provided in a checkbox format with no meaningful explanation for most of the specific limitations assessed. (Tr. 1951-52). The ALJ also observed that Peluffo's treatment notes reflected minimal abnormalities on examination and were therefore inconsistent with the degree of limitation assessed in her opinion. (Tr. 40, 1766, 1775, 1801, 2004-09, 2007). For example, during the same month that Peluffo issued her opinion, Plaintiff presented with relatively unremarkable mental status. (Tr. 2004, 2007). She was fully oriented with appropriate appearance and dress, unremarkable motor activity, appropriate interview behavior, normal speech, fair insight, fair judgment/impulse control, intact memory, good attention/concentration, unremarkable thought processes, appropriate thought content, unremarkable perception, and intact functional status. (Tr. 2004, 2007). The ALJ also found that Peluffo's opinion was inconsistent with other record evidence, including a consultative examination. (Tr. 42, 825-29).

The record reflects that the ALJ properly considered LMHC Peluffo's opinion in light of the relevant factors, including supportability and consistency. Under the revised regulations, the ALJ was not required to give deference to the opinion. *See Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion.").

The regulations explain that the "supportability" factor involves considering whether the medical source presented relevant objective evidence and supporting explanations to

support the opinion. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The ALJ expressly found that Peluffo's own treatment notes did not support her opinion.

Meanwhile, consistency "relates to the relationship between a medical source's opinion and other evidence within the record." *Frye v. Comm'r of Soc. Sec.*, 6:21-cv-741-DCI, at *2 (M.D. Fla. Apr. 7, 2022). The Eleventh Circuit has explained that ALJ decisions "should be read as a whole and need not repeat a discussion of facts that establish inconsistency, merely to place it near the conclusion that an opinion is inconsistent with the medical evidence." *Adams v. Soc. Sec. Comm'r*, No. 23-11233, 2024 WL 2846726, at *3 (11th Cir. June 5, 2024) (citing *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275-76 (11th Cir. 2024). In this case, the ALJ's decision includes a sufficient analysis of consistency. The ALJ specifically stated that Peluffo was not consistent with other evidence of record, including the psychological consultative examination. (Tr. 42).

For the forgoing reasons, I find that the ALJ's decision should be affirmed because substantial evidence supports the ALJ's findings regarding Plaintiff's condition, the RFC, and Plaintiff's limitations. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

## IV. CONCLUSION

Upon due consideration and for the reasons stated above, the ALJ'S decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE** AND **ORDRED** in Ocala, Florida on November 5, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:
Counsel of Record
Unrepresented Party
Courtroom Deputy